**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | Case No. 18-10098-MSH |
| DONALD C. KUPPERSTEIN, | ) | |
| | ) | |
| Debtor | ) | |
| | ) | |
| | ) | |
| EXECUTIVE OFFICE OF HEALTH AND | ) | |
| HUMAN SERVICES OF THE | ) | |
| COMMONWEALTH OF | ) | Adversary Proceeding |
| MASSACHUSETTS, | ) | No. 18-1101 |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DONALD C. KUPPERSTEIN, | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

**MEMORANDUM OF DECISION ON DEFENDANT'S MOTION TO DISMISS**

The plaintiff in this adversary proceeding, the Commonwealth of Massachusetts

Executive Office of Health and Human Services ("EOHHS"), filed a six-count complaint against

the defendant, Donald C. Kupperstein, the debtor in the main case. EOHHS asserts: (1) that

pursuant to subparts (a)(2)[1], (a)(4), (a)(6), and (a)(7) of § 523 of the Bankruptcy Code[2] certain

debts Mr. Kupperstein owes to it should be excepted from Mr. Kupperstein's bankruptcy

discharge (counts I through IV); (2) that Mr. Kupperstein's general bankruptcy discharge should

---

[1] Count I refers to only § 523(a)(2), but it is undisputed that EOHHS seeks a determination of nondischargeability
under § 523(a)(2)(A).
[2] All references to the Bankruptcy Code or Code are to 11 U.S.C. § 101 *et seq.*

be denied based on Code § 727(a)(4)[3] (count V); and (3) that Mr. Kupperstein's bankruptcy case

should be dismissed for bad faith and abuse under Code § 707(b)(3)(A) and (B) (count VI).

Mr. Kupperstein has moved under Fed. R. Civ. P. 12(b)(6), made applicable to this

adversary proceeding by Fed. R. Bankr. P. 7012(b), to dismiss all counts of the complaint. In

ruling on his motion, I accept all well-pleaded factual allegations in the complaint as true,

drawing all reasonable inferences in EOHHS's favor. *Langadinos v. American Airlines, Inc.*, 199

F.3d 68, 69 (1st Cir. 2000). A claim cannot be dismissed if the plaintiff has demonstrated "a

plausible entitlement to relief." *Sanchez v. Pereira–Castillo*, 590 F.3d 31, 41 (1st Cir. 2009)

(citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A plaintiff's obligation "requires more than

labels and conclusions and a formulaic recitation of the elements of a cause of action will not

do[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

For purposes of this motion, the relevant facts alleged in the complaint are as follows.

The relationship between Mr. Kupperstein and EOHHS has its origins in the death, on September

17, 2013, of an individual named Fred Kuhn. Prior to his death, Mr. Kuhn had health insurance

through MassHealth, the Massachusetts Medicaid program, which EOHHS administers. Under

state law, when Mr. Kuhn died his estate became obligated to reimburse MassHealth for certain

health related expenses incurred in caring for Mr. Kuhn. These expenses totaled $191,746.79. In

the ordinary course, EOHHS recorded a lien on Mr. Kuhn's home in Norton, Massachusetts to

secure its right to payment.

In November of 2014, Mr. Kupperstein, a licensed Massachusetts attorney, and Thomas

Sheedy met with Carol Thibodeau, Mr. Kuhn's daughter and the personal representative of his

probate estate appointed by the Bristol County Probate Court. Mr. Kupperstein and Mr. Sheedy

---

[3] Count V refers to only Code § 727(a)(4), but it is undisputed that EOHHS seeks denial of Mr. Kupperstein's discharge under Code § 727(a)(4)(a) based on "false oath or account."

told Ms. Thibodeau they could help her with unpaid real estate taxes on the Norton property

totaling $3,379.13. They convinced her to sign a deed as Mr. Kuhn's estate representative

transferring for nominal consideration title to the Norton home to the Reservoir Street Realty

Trust, a nominee trust of which Mr. Sheedy was trustee. Mr. Kupperstein, as the trust's attorney,

drafted the deed and took Ms. Thibodeau's acknowledgement. All of this was done without the

knowledge of the attorney for Mr. Kuhn's probate estate even though Mr. Kupperstein was

aware of the probate proceedings and the identity of the estate's counsel.

On November 29, 2016, the probate court issued an order invalidating the transfer of the

Norton property by Ms. Thibodeau to the trust. Ignoring the probate court's ruling, Mr.

Kupperstein caused Mr. Sheedy to transfer title to the Norton property to yet another nominee

trust, the Norton Realty Trust, of which Mr. Kupperstein was trustee. Prior to that, Mr.

Kupperstein recorded a notice of contract for services or material supplied with respect to the

property for $250,000. He then caused Mr. Sheedy to consent to a $250,000 judgment in favor of

Mr. Kupperstein on his notice of contract claim, obtained an execution on his judgment and had

a local sheriff record the execution along with a suspended levy against the property. During

much of this time and thereafter, Mr. Kupperstein and Mr. Sheedy were renting the Norton

property to third parties and receiving rent.

In further disregard of the probate court's November 29, 2016 order invalidating the

original transfer of title by Ms. Thibodeau to the Reservoir Street Realty Trust, on October 17,

2017, Mr. Kupperstein initiated a try title action in the Massachusetts Land Court seeking a

determination as to the ownership of the Norton property. The complaint did not mention that the

probate court had previously ruled that title to the property was held by Mr. Kuhn's estate, nor

did Mr. Kupperstein serve the complaint on EOHHS, which held a lien on the property. EOHHS

eventually intervened in the suit and after EOHHS informed the land court of the situation, the

court dismissed Mr. Kupperstein's complaint as frivolous and filed in bad faith and sanctioned

Mr. Kupperstein under Mass. Gen. Laws ch. 231, § 6F and Rule 11, ordering him to reimburse

EOHHS and Mr. Kuhn's estate for attorneys' fees of $6,330 and $3,163, respectively.

After further motion practice in the probate court, on October 19, 2017, the probate court

entered an order invalidating the second deed transferring the Norton property from the

Reservoir Street Realty Trust to the Norton Realty Trust and ordering Mr. Kupperstein and Mr.

Sheedy not to execute or record any further documents regarding the property or to enter the

property absent further order of the court.

Mr. Kupperstein persisted in ignoring the probate court's orders. He and Mr. Sheedy

continued renting the Norton property and collecting rent, resulting in EOHHS's filing a

complaint for contempt against Mr. Kupperstein and Mr. Sheedy. On December 22, 2017, after a

hearing, the probate court entered an order holding Mr. Kupperstein and Mr. Sheedy in contempt

and ordered them to deliver to EOHHS by 4:00 PM that day the keys to the Norton house, all

leases and other documents regarding the property, and all funds in bank accounts relating to the

property. Mr. Kupperstein and Mr. Sheedy also received a thirty-day suspended jail sentence for

willfully and repeatedly ignoring and violating the court's prior orders which the court indicated

it would re-visit at a hearing scheduled for March 9, 2018. Finally, Mr. Kupperstein was ordered

to pay a contempt sanction of $5,400 by the March 9, 2018 hearing date.

Mr. Kupperstein failed to comply with the probate court's December 22, 2017 order

causing the court *sua sponte* to issue an order to show cause for hearing on January 12, 2018,

why Messrs. Kupperstein and Sheedy should not be held in further contempt, why the suspension

of their thirty-day jail sentence should not be revoked, and why they should not be committed to

the Bristol County House of Correction. The day prior to the show cause hearing, on January 11, 2018, Mr. Kupperstein filed his chapter 7 bankruptcy petition in this court. At the probate court hearing the next day, with Mr. Kupperstein in attendance, the probate court ruled that the automatic stay triggered by Mr. Kupperstein's bankruptcy filing did not apply to the pending contempt proceeding and conducted its show cause hearing on the merits. The court found Mr. Kupperstein in contempt, lifted the suspension of its prior thirty-day suspended jail sentence, and committed Mr. Kupperstein and Mr. Sheedy to the house of correction. Mr. Kupperstein was released at the end of the day on January 12, 2018, upon his promise to deliver the keys and access to the Norton property along with all documents previously ordered, within seven days. The remainder of his sentence was again suspended pending further review at the previously scheduled March 9, 2018 hearing. Mr. Kupperstein delivered the keys within the seven-day timeframe ordered by the probate court, but did not turn over the required documents regarding the property as ordered.

During the March 9, 2018 contempt hearing, as the probate court seemed poised to re-impose its jail sentence, Mr. Kupperstein pulled from his pockets $5,400 in cash in payment of the monetary sanction imposed in the December 22, 2017 order. Nevertheless, on May 10, 2018, the probate court issued an order finding Mr. Kupperstein to be in contempt of several of the court's outstanding orders. The court ordered that Mr. Kupperstein and Mr. Sheedy were jointly and severally liable to EOHHS in the amount of $54,750 for the rents they collected rightfully belonging to Mr. Kuhn's estate and that such award "constitutes restitution of funds stolen from [the] Estate [of Fred Kuhn], the rightful owner of the property. . . ." The court ordered Mr. Kupperstein and Mr. Sheedy to pay the $54,750, plus attorneys' fees of $10,485 and statutory

interest of $70,289.60,[4] plus daily accrued interest at the statutory rate, to EOHHS or enter into a

mutually satisfactory payment plan on or before May 18, 2018. The order stated that the

attorneys' fees and interest were each "a Contempt sanction and a sanction under Rule 11." The

court ordered that Mr. Kupperstein and Mr. Sheedy be committed to jail for a period of thirty

days or until such time as they purged themselves of their contempts. The sentence was

suspended until May 18, 2018, the date on which the court scheduled a further hearing to review

compliance with its May 10, 2018 order.

Neither Mr. Kupperstein nor Mr. Sheedy appeared at the May 18, 2018 hearing, nor did

they pay or enter into a payment agreement as required by the May 10, 2018 order. This resulted

in the probate court's issuing capiases for their arrests. EOHHS has refrained from putting the

capias for Mr. Kupperstein's arrest in the hands of the sheriff pending the conclusion of this

adversary proceeding.

In connection with Mr. Kupperstein's bankruptcy case, EOHHS's complaint alleges

numerous discrepancies, omissions, and falsehoods in the schedules of assets and liabilities and

statement of financial affairs signed by Mr. Kupperstein under oath and filed by him in support

of his chapter 7 petition, as well as Mr. Kupperstein's testimony under oath at an examination

pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure.  For example, EOHHS

alleges that Mr. Kupperstein listed as an asset on his schedules the $250,000 owed to him by the

owner of the Norton property even though the probate court had invalidated the notice of

contract and execution for that claim. EOHHS cites examples of Mr. Kupperstein's false

testimony under oath at his Rule 2004 examination, including his testimony that he only received

a single payment from Mr. Sheedy when the probate court record established this to be false.

---

[4] The complaint does not reference the statutory basis for the award of interest.

Based on the foregoing factual allegations, EOHHS's complaint asserts the following claims for relief, all of which Mr. Kupperstein seeks to dismiss.

**Count I–Fraud, False Pretenses, False Representation Under Code § 523(a)(2)**

In count I of its complaint, EOHHS asserts that the $54,750 restitution award for rent money Mr. Kupperstein owes to EOHHS should be excluded from Mr. Kupperstein's bankruptcy discharge by virtue of Bankruptcy Code § 523(a)(2)(A). Bankruptcy Code § 523(a)(2)(A) makes non-dischargeable any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by – (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]" 11 U.S.C. § 523(a)(2)(A).

"An action under § 523(a)(2)(A) involves three distinct categories of misconduct—false pretenses, false representation, or actual fraud—albeit with elements that overlap." *Privitera v. Curran (In re Curran)*, 554 B.R. 272, 284 (B.A.P. 1st Cir. 2016), *aff'd*, 855 F.3d 19 (1st Cir. 2017). "A false representation is an express misrepresentation[.]" *Zacharakis v. Melo (In re Melo)*, 558 B.R. 521, 559 (Bankr. D. Mass. 2016) (citation omitted). The United States Court of Appeals for the First Circuit has determined that to establish a debt as nondischargeable because it was obtained by a false representation, a creditor must prove the following: "1) the debtor made a knowingly false representation or one made in reckless disregard of the truth, 2) the debtor intended to deceive, 3) the debtor intended to induce the creditor to rely upon the false statement, 4) the creditor actually relied upon the misrepresentation, 5) the creditor's reliance was justifiable, and 6) the reliance upon the false statement caused damage." *McCrory v. Spigel (In re Spigel)*, 260 F.3d 27, 32 (1st Cir. 2001) (footnote omitted) (citing *Palmacci v. Umpierrez*, 121 F.3d 781, 786 (1st Cir. 1997)). "The requirements for false pretenses 'are largely the same,

7

except that requirement of a false representation is replaced by a requirement of a false pretense, which is an implied misrepresentation or a false impression created by conduct of the debtor.'" *In re Curran*, 554 B.R. at 285 (quoting *Meads v. Ribeiro (In re Ribeiro)*, A.P. No. 11–1188, 2014 WL 2780027, at *9 (Bankr. D. Mass. June 19, 2014)).

"[E]xceptions to discharge are narrowly construed . . . and the claimant must show that its claim comes squarely within an exception enumerated in Bankruptcy Code § 523(a)." *In re Spigel,* 260 F.3d at 32 (quoting *Century 21 Balfour Real Estate v. Menna*, 16 F.3d 7, 9 (1st Cir.1994)). "Though the first two elements of the *Palmacci* test describe the conduct and scienter required to show fraudulent conduct generally, the last four embody the requirement that the claim of the creditor arguing nondischargeability in an adversary proceeding must arise as a direct result of the debtor's fraud[,]" and "the statutory language does not 'remotely suggest that nondischargeability attaches to any claim other than one which arises as a direct result of the debtor's misrepresentations or malice.'" *In re Spigel*, 260 F.3d at 32 (quoting *Century 21*, 16 F.3d at 10) (internal footnote omitted)).

The first issue here is whether the $54,750 in rent money Mr. Kupperstein owes to EOHHS arose as a direct result of Mr. Kupperstein's alleged false representation or false pretenses. The first two factors of the *Palmacci* test do not specify to whom the debtor must have made a false representation or who the debtor must have intended to deceive, but the remaining four factors require that in order for the putatively non-dischargeable claim to have arisen as a direct result of the debtor's misrepresentations, the misrepresentations must have been made to the creditor asserting the § 523(a)(2)(A) claim. *See In re Spigel*, 260 F.3d at 32. Here, with respect to the rent monies Mr. Kupperstein owes to EOHHS, though Mr. Kupperstein may have made knowingly false representations to the land court, the probate court, and Ms. Thibodeau,

among others, EOHHS's complaint does not assert any allegations that any express or implied false representations were made to EOHHS on which it actually and justifiably relied to its detriment. Thus, EOHHS fails to allege sufficient facts to support a plausible claim in count I for false representations or false pretenses under Code § 523(a)(2)(A).

There is, however, a third category of misconduct under § 523(a)(2)(A) for "actual fraud" which is not limited to fraud effected by misrepresentations by the debtor. *Dewitt v. Stewart (In re Stewart)*, 592 B.R. 414, 434 (B.A.P. 1st Cir. 2018) (citing, among other cases, *Husky Int'l Elecs., Inc. v. Ritz*, —— U.S. ——, 136 S. Ct. 1581, 1586, 1590 (2016)). In *Husky*, the Supreme Court explained that "[a]lthough 'fraud' connotes deception or trickery generally, the term is difficult to define more precisely." 136 S. Ct. at 1586. The Court further held that "anything that counts as 'fraud' and is done with wrongful intent is 'actual fraud[,]'" and interpreted "actual fraud" to encompass schemes designed to hinder the collection of a debt, such as a fraudulent conveyance, even when those schemes do not involve a false representation. *Id*. at 1586, 1590.

I find sufficient allegations in the complaint that Mr. Kupperstein diverted and stole funds in the form of rents from Mr. Kuhn's estate.  Such conduct, if proven at trial, could form the basis of a claim for actual fraud under Code § 523(a)(2)(A).  Accordingly, the motion to dismiss will be allowed with respect to count I with respect to the claims of false pretenses and false representations, but the motion will be denied as to claims of actual fraud.

**Count II–Fraud and Larceny Under Code § 523(a)(4)**

In count II, EOHHS asserts that the $54,750 restitution award for rent money Mr. Kupperstein owes to EOHHS should be excluded from Mr. Kupperstein's bankruptcy discharge by virtue of Bankruptcy Code § 523(a)(4) which makes non-dischargeable any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny[.]" 11 U.S.C. §

523(a)(4). EOHHS claims that because the probate court found that the $54,750 in rent money owed to EOHHS "constitutes restitution of funds stolen from the Estate [of Fred Kuhn]," the debt is one for larceny for purposes of § 523(a)(4). Although the heading of count II refers to both fraud and larceny, EOHHS stated at the hearing on the motion to dismiss that it was proceeding solely on a claim for larceny.

As the probate court has determined that the $54,750 owed to EOHHS was for the return of stolen funds, the motion to dismiss will be denied as to the larceny claim in count II. *See Treadwell v. Glenstone Lodge, Inc. (In re Treadwell)*, 459 B.R. 394, 406 (Bankr. W.D. Mo. 2011) (quoting 4 *Collier on Bankruptcy* ¶ 523.10[2] (15th ed. rev.)) ("For purposes of section 523(a)(4), a bankruptcy court . . . may follow federal common law, which defines larceny as a 'felonious taking of another's personal property with intent to convert it or deprive the owner of same.'").  EOHHS has waived any claim for fraud or defalcation while acting in a fiduciary capacity or embezzlement.

**Count III—Willful and Malicious Injury Under Code § 523(a)(6)**

EOHHS accuses Mr. Kupperstein of willfully and maliciously injuring EOHHS by preventing it from recouping Medicaid benefits owed to the Commonwealth. This refers to the $191,746.79 in benefits extended to Mr. Kuhn before his death for which EOHHS is entitled to reimbursement from Mr. Kuhn's estate.

The debts which are the subject of the EOHHS complaint in this adversary proceeding do not include its Medicaid reimbursement claim. They consist exclusively of the probate court's rent restitution award and the sanction awards ordered by the probate and land courts. Accordingly, the motion to dismiss will be granted as to count III.

**Count IV—Fines, Penalties and Forfeitures Under Code § 523(a)(7)**

Bankruptcy Code § 523(a)(7) makes non-dischargeable fines, penalties or forfeitures payable to and for the benefit of a governmental unit provided they are not in compensation for actual pecuniary loss. 11 U.S.C. § 523(a)(7). EOHHS seeks a determination that the $54,750 restitution award as well as amounts owed for attorneys' fees and interest constitute nondischargeable fines, penalties or forfeitures payable to it as a governmental unit.  With respect to the restitution award, I find that Code § 523(a)(7) does not apply to civil restitution claims.  *See State of Hawaii v. Parsons (In re Parsons)*, 505 B.R. 540, 544 (Bankr. D. Haw. 2014) (state office of consumer protection's claims for restitution were equal in amount to the economic losses suffered by actual consumers; such claims are not "a fine, penalty, or forfeiture" within the ordinary meaning of those terms, and are "compensation for actual pecuniary loss" suffered by the consumers). Restitution obligations imposed in criminal proceedings, on the other hand, are for the benefit of the state and not the victim of the crime and are nondischargeable under Code § 523(a)(7).  *Kelly v. Robinson*, 479 U.S. 36, 53 (1986).

With respect to the award of attorneys' fees (from the land court and probate court) and interest, I find that the record is insufficiently developed for me to make a determination as to whether those awards were (1) "a fine, penalty, or forfeiture[,]" (2) "payable to and for the benefit of a governmental unit," and (3) "not compensation for actual pecuniary loss[.]" 11 U.S.C. § 523(a)(7).  The basis for the award of interest could have been penal if it was discretionary and not based on a specific statute and the award of attorneys' fees to a governmental unit (which does not charge attorneys' fees for its public work) may also have been penal and not compensatory.  *See Richmond v. New Hampshire Supreme Court Committee on Professional Conduct*, 542 F.3d 913, 920-21 (1st Cir. 2008) (attorney discipline costs

11

incurred by state in attorney disciplinary proceedings assessed against the debtor were excepted

from discharge under § 523(a)(7) because they were fines or penalties paid to a governmental

unit and the assessment did not constitute compensation for actual pecuniary loss).  A

determination of whether these awards were in compensation for actual pecuniary loss so as to

be excluded from the scope of § 523(a)(7) must await trial. For the reasons stated above, the

motion to dismiss count IV will be allowed with respect to the restitution claim and denied with

respect to the award of attorneys' fees and interest.

**Count V—False Oath or Claim Under Code § 727(A)(4)**

Bankruptcy Code § 727(a)(4)(a) mandates denial of a debtor's discharge when the debtor

knowingly and fraudulently made a false oath or account in or in connection with his case. The

motion to dismiss will be denied as to count V because a trial is needed to determine whether

Mr. Kupperstein's conduct as plausibly alleged by EOHHS was undertaken knowingly and

fraudulently.

**Count VI—Dismissal under Code § 707(b)(3)(A) and (B)**

Bankruptcy Code § 707(b) authorizes a court to dismiss a chapter 7 case of an individual

debtor whose debts are primarily consumer debts if it finds that the granting of relief to the

debtor would be an abuse of the provisions of chapter 7. 11 U.S.C. § 707(b)(1). Subsection 3 of §

707(b) provides that in considering whether the granting of bankruptcy relief would be an abuse

of the provisions of chapter 7, the court shall consider whether the debtor filed the petition in bad

faith or whether the totality of the debtor's financial situation demonstrates abuse. 11 U.S.C. §

707(b)(3)(A) and (B). In its complaint, EOHHS alleges both bad faith and abuse under the

totality of the circumstances to justify its count for dismissal.  Mr. Kupperstein listed his debts to

EOHHS and the Estate of Fred Kuhn in his Schedule E/F as "unknown" in amount.

But § 707(b) is limited by its express terms to cases where a debtor's debts are primarily consumer debts. EOHHS concedes in its complaint that Mr. Kupperstein's debts are *not* primarily consumer in nature because his indebtedness to EOHHS, which are non-consumer debts, exceeds his consumer debts. The fact that Mr. Kupperstein neglected to list the amount of his debts to EOHHS on his schedules is not relevant to a § 707(b) inquiry. The statute does not say the court "may dismiss a case filed by an individual debtor under this chapter whose scheduled debts are primarily consumer debts." The word "scheduled" is absent from the statute. The amounts owed by Mr. Kupperstein to EOHHS are debts as defined in Code § 101(12) whether scheduled in an amount certain or not. *See also* Code § 101(5) (definition of a "claim"). Accordingly, the motion to dismiss count VI will be granted.

For the reasons explained above, the motion to dismiss will be granted in part and denied in part as to count I, denied as to count II, granted as to count III, granted in part and denied in part as to count IV, denied as to count V, and granted as to count VI. EOHHS's request for the award of attorneys' fees and the imposition of sanctions under Fed. R. Bankr. P. 9011(b) is denied.  A separate order shall enter.

Dated: October 24, 2019                              By the Court,

                                                     _____
                                                     Melvin S. Hoffman
                                                     U.S. Bankruptcy Judge